O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARTINA L. WALKER, KEVIN
CRAWFORD, SNEAKERS &
CLARENCE DEMETRIUS TATE,

                    Plaintiffs,

        v.

KEITH STANTON, ARCHIE
"JOE" BIGGERS, NICOLE
SMITH, DOE GUARD TORRES,
DOE GUARD LAMPTON, G.
GARDIA, VICTOR
RODRIGUEZ, LEE COX,
KENNETH RISEN, ROSALIE
GARCIA, JOSE GRANADOS,
NANCY ELLEN NAGER, ALAN
NAGER, MARYLOU HILLBERG,
ROBERT J. PERRY, DALE
MICHAEL RUBIN, TIMMIE
SALTZMAN, MARTIN
GOLDMAN, DALE LONG,
SIMON AVAL, P. TONRA,
JOHN A. MCDONALD, JAMES
WALSH, LUIS AREVALO,
HALEY FROMHOLZ, DARCEL
WOOD, LINDA DAVIS, CCII
HOBBS, BRUCE MITCHELL,
A. SCOTT BARRON,
CALIFORNIA CORRECTIONAL
PEACE OFFICERS
ASSOCIATION, GWEN
FLEMING, ST. MARY'S

Case No. EDCV 08-24-VAP
(OPx)

**ORDER (1) GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTION FOR
RELIEF FROM JUDGMENT; (2)
DISMISSING FIRST AMENDED
COMPLAINT; (3) DECLARING
PLAINTIFF TATE TO BE A
VEXATIOUS LITIGANT; (4)
ENTERING PRE-FILING ORDER AS
TO PLAINTIFF TATE; AND (4)
VACATING ALL HEARING DATES**

1  HOSPITAL, W. MCCULLOUGH, )
   CALIFORNIA APPELLATE     )
2  PROJECT, CHILDREN'S      )
   HOSPITAL OF LOS ANGELES, )
3  M. WELLARD, FRANK        )
   DORAME, M.A. HILL-       )
4  SOKOLIK, WALTER H.       )
   CROSKEY, JOAN D. KLEIN,  )
5  RICHARD D. ALDRICH, AND  )
   DOES 1 through 10,       )
6                           )
                            )
7  _____ )

                    Defendants. )

8      The Court has received and considered all papers

9  filed in support of, and in opposition to, Plaintiffs'

10  Motion for Relief from Judgment.  The Court also has

11  received and considered Plaintiffs' response to the

12  Court's "Order to Show Cause Why [Plaintiffs] Should Not

13  Be Declared Vexatious Litigants."  The matters are

14  appropriate for resolution without hearing.  <u>See</u> Fed. R.

15  Civ. P. 78; Local Rule 7-15.  For the reasons set forth

16  below, the Court GRANTS in part and DENIES in part the

17  Motion for Relief from Judgment, DISMISSES the remainder

18  of the action, DECLARES Plaintiff Tate to be a vexatious

19  litigant, ORDERS that Tate be subject to filing

20  restrictions in the Central District, and VACATES all

21  noticed hearing dates.

23  **I. BACKGROUND**

24  **A.   Proceedings before the Filing of this Case**

25        The allegations of Plaintiffs' Complaint and First

26  Amended Complaint are understood more easily when read in

27  the context of Plaintiff Tate's prior criminal

28

convictions and his petition for federal habeas relief.
The following background is drawn from the "Amended
Report and Recommendation of United States Magistrate
Judge" ("Habeas Order") filed on January 25, 2002, in
Tate v. Rice, No. CV 99-7750-AHM (MAN) (Doc. no. 65).
The magistrate judge's report was adopted as the final
order of the court, and became the basis for a judgment
dismissing Tate's habeas petition on July 29, 2002 (Doc.
nos. 70, 71).

In 1992, authorities in Florida charged Plaintiff
Tate with abuse of his seven-year-old stepson, whom the
Court will refer to as "N." (Habeas Order 4:22-5:4.)
According to the investigating officer, Gwen Fleming, she
observed scars on N.'s back and injuries to the front and
back of his legs. (Id.) She did not observe injuries to
his face or ears at that time. (Id.) Tate admitted to
the investigating officer that he had beaten N. with
belts and cords. (Id.)

Plaintiff Tate later moved to California with N. and
N.'s mother, Gory Erling. (Habeas Order 5:6-7.) In
1994, Tate's three sons from an earlier marriage also
moved to California to live with Tate. (Id. 22:3-5.) In
California, Plaintiff Tate again was charged with crimes
stemming from his alleged abuse of N. The jury in Tate's
criminal trial convicted him of one count of torture and

1  two counts of child abuse.  (Id. 3:3-6.)  The jury also
2  found that Tate inflicted great bodily injury during the
3  commission of the child abuse.  (Id. 3:6-8.)  Tate was
4  sentenced to a prison term of life with the possibility
5  of parole.  (Id. 3:23-26.)

6

7       As part of its case against Tate, the prosecution
8  presented the testimony of Dr. Alan Nager, a pediatric
9  emergency physician who examined N. at Children's
10  Hospital in Los Angeles on March 20, 1997.  (Habeas Order
11  5:22-6:10.)  Dr. Nager testified that he observed "a
12  significant number of injuries essentially on every part
13  of [N.'s] body."  (Id. 5:24-25.)  He also provided his
14  opinion that some of those injuries had been sustained in
15  the few days before his examination.  (Id. 5:25-6:1.)
16  Dr. Nager testified, however, that the majority of the
17  injuries were inflicted over a long period of time,
18  including a fracture to N.'s nose caused by a
19  "substantial force," that appeared not to have been
20  treated.  (Id. 5:25-6:4.)  Dr. Nager also observed N.'s
21  deformed and "cauliflowered" ear, which suggested the ear
22  suffered a blow that, when left untreated, caused blood
23  to accumulate under the ear tissue.  (Id. 6:4-7.)  N.'s
24  hair loss suggested his hair roots had been damaged by
25  repeated trauma, and Dr. Nager further testified about
26  scarring on N.'s forehead, bruising on his cheeks, and
27  marks on his neck, all of which appeared to have been
28

4

inflicted with an object. (Id. 6:7-10.) Dr. Nager
testified that the injuries he observed during his
examination in 1997 were different than those described
in N.'s medical records from 1992. (Id. 54:6-9.)

Gwen Fleming, the Florida officer who investigated
the 1992 charges against Plaintiff also testified at
Tate's California trial. (Habeas Order 6:14-18.) When
shown a photograph of the injuries allegedly inflicted on
N. in California, she testified that the injuries in the
photograph were different than those she observed during
her investigation in Florida in 1992. (Id.) In
addition, the prosecution presented the testimony of N.
and Tate's three sons. (Id. 49:18-20.)

Tate testified in his own defense at trial. He
acknowledged responsibility for physically abusing N. in
1992, and stated that he then attended counseling
sessions. (Habeas Order 6:22-25.) He testified that N.
was placed in foster care, and that he received reports
that N. suffered abuse while in foster care. (Id.
6:26-27.) Tate further testified that after his family
moved to California, he would use "time outs" rather than
physical punishment to discipline N., as he had learned
in counseling. (Id. 6:28-7:2.) He denied ever injuring
N. after they had moved to California, and stated that
any incidents of abuse described during the prosecution's

1   case in chief had occurred in Florida in 1992. (<u>Id.</u>
2   7:2-6.)

3

4        As described by the order addressing Tate's habeas
5   petition, the "central premise" of his collateral attack
6   on his conviction was that N. "had no new injuries on
7   March 20, 1997, the day [N.] was taken into protective
8   custody, and that all his injuries were pre-existing and
9   stemmed from abuse he incurred in Florida." (<u>Id.</u> 45.)
10  Tate also contended:

11       that there was a conspiracy against him,
12       apparently racist in nature, by which
13       persons involved in his prosecution here,
14       as well as law enforcement, children's
15       services and medical personnel in
16       Florida, conspired to alter medical
17       records -- both the prior Florida records
18       and the March 20, 1997 examination
19       records -- and to suppress evidence from
20       Florida (photographs), in order to
21       falsely create evidence that Nathan
22       incurred injuries while in California and
23       that Dr. Nager actually examined him, so
24       that Petitioner could be prosecuted again
25       in California for the same crime.

26  (<u>Id.</u> 45-46.)
27  ///
28

As part of his habeas claim for ineffective assistance of counsel, Tate argued that his trial counsel should have presented evidence that Dr. Nager did not, in fact, examine N. on March 20, 1997, and that Dr. Nager perjured himself by testifying he had conducted such an examination. (Habeas Order 52:21-24.) The Habeas Order found Tate's assertion to be based on a misunderstanding of Dr. Nager's testimony and the medical records documenting the examination of N. on March 20, 1997. (Id. 52:21-55:1.)

According to Dr. Nager's testimony and those records, a resident physician named Sandy Stein first examined N. (Id.) Dr. Nager, the attending physician, then re-examined N. and ordered that various tests be performed. (Id.) As explained by the Habeas Order, "the fact that another, less experienced physician examined [N.] first and was the physician whose signature is first present on the medical records introduced at trial does not demonstrate that Dr. Nager never conducted a subsequent medical examination on [N.], and then also signed those records, on that same date." (Id. 54:20-24.) In addition, the Habeas Order rejected Tate's contention that the prosecutor had knowingly presented perjured testimony by using Dr. Nager as a witness. (Id. 59:14-18.)

///

1    Tate also claimed that photographs of N.'s injuries
2  taken in Florida in 1992 had been "suppressed." (Habeas
3  Order 48 n.14.)  An officer testified at trial that she
4  had attempted to obtain the 1992 photographs of N. but
5  that the photographs had been destroyed by the Florida
6  authorities by the time of the 1997 investigation. (Id.)
7  Tate's claims that the 1992 photographs had been
8  "suppressed" thus were found to lack merit. (Id.)

9

10   The Habeas Order rejected Tate's claims that his
11 appellate counsel was ineffective, for failing to raise
12 on his direct appeal many of the issues the magistrate
13 judge already had found to lack merit. (Id. 56-57.)

14

15 **B.  Proceedings in this Case**
16    **1.  Allegations of the Complaint**
17    On January 10, 2008, Plaintiffs Martina L. Walker,
18 Kevin Crawford, "Sneakers," and Clarence Demetrius Tate
19 filed a complaint in pro se, captioned "Racketeer
20 Influenced Corrupt Organization (RICO) Claims Damages
21 Currently Filed. [¶]  18 U.S.C. §s 1961-1964. [¶]
22 State Pendent Claims.  Defamation, Assault & Battery, And
23 Fraud & Deceit" ("Complaint").

24

25    The Complaint named 42 Defendants, including the
26 following persons:  (1) Victor Rodriguez, the prosecutor
27 in Tate's state criminal case; (2) Rosalie Garcia and
28

Jose Granados, law enforcement officers who investigated the child abuse allegations against Tate in California; (3) Alan Nager, the physician who examined N. and testified at Tate's trial; (4) Marylou Hillberg, Tate's state appellate counsel; (5) Judge Robert J. Perry of the California Superior Court, who presided over Tate's trial, as well as another member of that court, Judge Haley Fromholz; (6) Gwen Fleming, the officer who investigated the earlier child abuse claims in Florida; and (7) Justices Walter H. Croskey, Joan D. Klein, and Richard D. Aldrich of the California Court of Appeal, who considered Tate's direct appeal.  The Complaint also asserted claims against the California Correctional Peace Officers Association, the California Appellate Project, and Children's Hospital of Los Angeles.

According to the theory set forth in Plaintiffs' Complaint, Tate's conviction resulted from a conspiracy among all Defendants.  (Compl. 15, 17.)  Tate and Plaintiffs Walker and Crawford suffered economic harm, because Tate's wrongful conviction prevented them from operating their restaurant, Sneakers, which also is a Plaintiff.  (Id.)  The actions taken by Defendants as part of their conspiracy allegedly included "fraud, tampering with evidence, kidnapping [of Plaintiff Tate], interfering with interstate commerce, fraud by wire, and obstruction of justice."  (Compl. ¶ 15.)

The Complaint reiterated some of the perceived wrongs Plaintiff Tate apparently raised in his federal habeas petition:  that the prosecutor in his criminal trial fabricated and falsified evidence, (Compl. ¶¶ 18, 42); that law enforcement officers and others concealed and refused to provide Plaintiffs with copies of the 1992 photographs showing N.'s earlier abuse, (Compl. ¶¶ 19-20, 29, 42); that the injuries visible on N.'s body in 1997 were "identical" to those he had already suffered in 1992, (Compl. ¶ 42); that Dr. Nager provided false testimony concerning N.'s injuries, (Compl. ¶ 28); and that his appellate counsel failed to raise many of these issues on the direct appeal from his conviction (Compl. ¶ 32).

According to Plaintiffs, the conspiracy encompassed all aspects of Tate's criminal proceedings.  The California Appellate Project, Tate's appellate counsel, and the California Court of Appeal, Second District, allegedly conspired to prevent Tate from raising certain issues on his direct appeal.  (Compl. ¶ 21.)  When the California Court of Appeal remanded Tate's case for resentencing, the attorney appointed to represent Tate allegedly had ex parte communications with Judge Perry, who presided over the resentencing.  (Compl. ¶¶ 21-22.) The two purportedly acted to prevent Tate from obtaining relief in a civil case against Dr. Nager and Children's

1   Hospital.   (<u>Id.</u>)  Dr. Nager's wife, Defendant Nancy Ellen

2   Nager, also participated in the conspiracy, because she

3   worked at the California Appellate Project, the

4   organization that provided Tate with legal representation

5   during his direct appeal.  (Compl. ¶¶  22-23.)

6

7      Tate's wife, Gori V. Tate, apparently also faced

8   charges related to abuse of N.  (Compl. ¶ 33.)

9   Plaintiffs alleged that Gori Tate's attorneys, Defendants

10  Simon Aval and John A. McDonald, conspired with the

11  prosecutor in Plaintiff Tate's case to conceal evidence.

12  (Compl. ¶¶ 33-34.)  Defendants Aval and McDonald

13  allegedly told their client, Gori Tate, that Plaintiff

14  Tate had turned her in to authorities in order to obtain

15  a lesser sentence for himself.  (Compl. ¶ 35.)  Aval and

16  McDonald purportedly pressured Gori Tate into pleading

17  guilty and "to accept a battered women's syndrome

18  defense," as part of their participation in the

19  conspiracy.  (Compl.  36.)

20

21     The alleged conspiracy extended into proceedings

22  concerning Tate's children in the dependency court, where

23  Tate's criminal trial judge, Judge Perry, purportedly

24  intervened to prevent Tate from obtaining the "records

25  which would have revealed the RICO activity."  (Compl. ¶

26  41.)

27  ///

28

1    Finally, the Complaint alleged wrongdoing by prison
2  guards and their union, the California Correctional Peace
3  Officers Association, who allegedly falsified and
4  concealed evidence to prevent Plaintiff Tate from
5  obtaining parole, including the planting of a seven-inch
6  knife in Tate's cell.  (Compl. ¶¶ 48-61.)  The
7  correctional officers did so in furtherance of the RICO
8  conspiracy begun by the prosecutor in Tate's criminal
9  trial.  (Compl. ¶ 67.)  Plaintiffs also sued Tate's
10  counsel at a hearing before the Board of Parole Hearings,
11  (Compl. ¶¶ 44-47), as well as commissioners of that body,
12  (Compl. ¶¶ 62-65).

13

14    Plaintiffs alleged the conspiracy caused them to
15  suffer economic losses, when Tate could not secure his
16  release by posting bail and could not return to the
17  operation of the restaurant, Sneakers.  (Compl. ¶¶
18  27-30.)  Plaintiffs also suffered losses when the "lies"
19  of Aval and McDonald caused Tate to lose his restaurant
20  and the renewal of a sublease by the Church of
21  Scientology.  (Compl. ¶ 35.)  Plaintiffs Walker and
22  Crawford each sought $10 million in damages, while
23  Plaintiff Tate sought $50 million in damages, to
24  compensate them for the losses sustained as a result of
25  the alleged RICO conspiracy.  (Compl. ¶¶ 70-72.)  The
26  Complaint also sought relief for state law claims of
27
28

libel, assault and battery, and fraud and deceit.
(Compl. ¶¶ 77-81.)


### 2. First Amended Complaint

Plaintiffs filed a First Amended RICO Complaint
("FAC") on April 8, 2008, raising allegations similar to
those made in the Complaint.  The FAC's most significant
new allegation claimed that on February 29, 2008,
Plaintiff Crawford learned from an employee of the county
Department of Children's Services in Florida that
photographs of N. taken in 1992 had, in fact, been sent
to authorities in Los Angeles in 1997.  (FAC ¶ 17.)


### 3. Procedural history

By Order dated March 5, 2008, the Court directed
Plaintiffs to file a RICO Case Statement no later than
April 7, 2008.  The Order also took off calendar Motions
filed by certain Defendants seeking dismissal or other
relief.[1]
///
///

--------

[1]Those Motions were: (1) Defendants Walter H.
Croskey, Richard D. Aldrich, Joan D. Klein, Robert J.
Perry, and Haley J. Fromholz's Motion to Dismiss; (2)
Defendants Simon Aval and John A. McDonald's Motion to
Dismiss and Motion for an Order Requesting Plaintiff to
Furnish Security; (3) Defendants Children's Hospital Los
Angeles and Alan Nager's Motion to Dismiss or,
Alternatively, for a More Definite Statement; and (4)
Defendant Victor Rodriguez, Timmie Saltzman, and Martin
Goldman's Motion to Post Security and Dismiss.

1       Following a request for extension lodged by
2   Plaintiffs on April 8, 2008, the Court issued an Order on
3   April 10, 2008, granting Plaintiffs an extension until
4   May 1, 2008, to file their RICO Case Statement.  (Doc.
5   no. 74.)  The April 10, 2008 Order also ordered
6   Plaintiffs to show cause why Plaintiffs Sneakers should
7   not be dismissed, because it is a business entity
8   appearing without counsel.
9
10      By Order dated May 2, 2008, and after no RICO Case
11  Statement had been filed by the May 1, 2008 deadline, the
12  Court dismissed the FAC for failure to prosecute, denied
13  Defendants' pending motions as moot, and ordered
14  Plaintiffs to show cause in writing why they should not
15  be declared vexatious litigants and subjected to a
16  pre-filing order.  (Doc. no. 89.)  Plaintiffs' response
17  to the order to show cause was to be filed no later than
18  June 6, 2008.  The May 2, 2008 Order also noted the
19  absence of any response concerning the representation of
20  Sneakers.
21
22      On May 16, 2008, Plaintiffs filed a Motion for Relief
23  from Judgment, requesting relief from the Court's May 2,
24  2008 Order dismissing the FAC.
25
26      On June 3, 2008, Plaintiffs filed a document
27  captioned "Motion to Show Cause Why Tate Should not be
28

1  Declared a Vexatious Litigant" ("OSC Response"), which

2  the Court construes as a response to its May 2, 2008

3  Order to show cause why they should not be declared

4  vexatious litigants.[2]  (Doc. no. 100.)  Defendants Victor

5  Rodriguez, Martin Goldman, and Timmie Saltzman filed a

6  Reply to Plaintiffs' OSC Response on June 12, 2008.

7  Defendants Simon Aval and John A. McDonald filed a

8  Joinder on June 13, 2008.

9

10                    **II. DISCUSSION**

11 **A.  Motion for Relief from Judgment**

12      Rule 60 of the Federal Rules of Civil Procedure

13 provides that, "On motion and just terms, the court may

14 relieve a party or its legal representative from a final

15 judgment, order, or proceeding for the following reasons:

16 . . . mistake, inadvertence, surprise, or excusable

17 neglect . . . or . . . any other reason that justifies

18 relief."  Fed. R. Civ. P. 60(b)(1), (6).

19

20      Plaintiffs' Motion for Relief from Judgment ("Rule 60

21 Motion") seeks relief from the Court's May 2, 2008 Order

22 dismissing the FAC for failure to file a RICO Case

23 Statement, on the ground of excusable neglect and under

24 the prisoner mailbox rule.  (Rule 60 Motion at 3.)  In a

25

26 _____

27      [2]Plaintiffs filed documents bearing the same caption
   on June 26, 2008, and June 30, 2008.  (Doc. nos. 114,
   118.)  The Court construes those filings to be untimely
28 responses to its May 2, 2008 Order.

Declaration included with Plaintiffs' Rule 60 Motion, Plaintiff Tate states that on April 30, 2008, he provided the RICO Case Statement to a correctional officer for mailing.  (Rule 60 Motion at 2.)  The RICO Case Statement was received by the Clerk's Office and stamped "Received but Not Filed" on May 2, 2008.  (Rule 60 Motion, Ex. A.)

Under the so-called "prisoner mailbox rule," court documents submitted by a prisoner proceeding in pro se are considered "filed" as of the date the prisoner deposits the document with prison authorities for mailing.  Houston v. Lack, 487 U.S. 266, 270 (1988) (deeming a pro se prisoner's notice of appeal in habeas case filed when he "delivered the notice to prison authorities for forwarding to the District Court"); Faile v. Upjohn Co., 988 F.2d 985, 988 (9th Cir. 1993) (extending Houston to apply to other civil filings). Here, Tate has submitted a declaration stating he complied with this Court's Order to file a RICO Case Statement by May 1, 2008, when he gave his RICO Case Statement to a correctional officer on April 30, 2008. Under Houston and Faile, Tate's RICO Case Statement should have been considered a timely filing and should not have been stamped "Received/Returned" on May 2, 2008.
///
///

1    Plaintiffs' Rule 60 Motion fails, however, to provide
2  a sufficient justification for Plaintiffs Walker and
3  Crawford's failure to comply with the Court's May 2, 2008
4  Order.  Plaintiffs Walker and Crawford are not alleged to
5  be inmates, and neither has provided a declaration
6  setting forth a basis for relief from judgment under Rule
7  60(b).  Tate's declaration states only that he "possessed
8  the documents that related to the Rico Case Statement."
9  (Rule 60 Mot. at 3:1.)  To the extent that Tate prepared
10  and attempted to file the RICO Case Statement on behalf
11  of his co-Plaintiffs, he could not do so unless acting as
12  a licensed attorney.  "While a non-attorney may appear
13  pro se on his own behalf, he has no authority to appear
14  as an attorney for others than himself."  Johns v. County
15  of San Diego, 114 F.3d 874, 876 (9th Cir. 1997) (internal
16  quotation and brackets omitted) (quoting C.E. Pope Equity
17  Trust v. United States, 818 F.2d 696, 697 (9th Cir.
18  1987)).  The Court thus finds no basis under Rule 60(b)
19  to grant Plaintiffs Walker and Crawford relief from its
20  May 2, 2008 Order dismissing the FAC.

21

22    Accordingly, the Court grants Plaintiffs' Rule 60
23  Motion in part and denies it in part.  Plaintiff Tate is
24  granted relief from the Court's May 2, 2008 Order, and
25  the dismissal of the FAC as to him is vacated.  The Court
26  denies the Motion as to Plaintiffs Walker and Crawford.
27  ///

28

**B.   Dismissal of FAC**

Even though the Court grants Plaintiff Tate's Rule 60 Motion in part, his claims nevertheless are subject to dismissal for lack of subject matter jurisdiction under the Rooker-Feldman doctrine.

Under the Rooker-Feldman doctrine, a federal district court has no authority to review the final determinations of a state court in judicial proceedings.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923) (holding district courts may not exercise appellate jurisdiction over state courts).  Instead, the proper court in which to obtain such review is the United States Supreme Court.  28 U.S.C. § 1257; Feldman, 460 U.S. at 476.  In other words, the doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004) (citation omitted); see also Branson v. Nott, 62 F.3d 287, 291 (9th Cir. 1995) (dismissing for lack of jurisdiction where claim amounted "to nothing more than an impermissible collateral attack on prior state court decisions") (citing MacKay v. Pfeil, 827 F.2d 540, 543 (9th Cir.1987)).  A district court may raise sua sponte the issue of subject matter jurisdiction.

1    As explained by the Ninth Circuit, the Rooker-Feldman
2  doctrine generally provides that

3        [i]f a federal plaintiff asserts as a
4        legal wrong an allegedly erroneous
5        decision by a state court, and seeks
6        relief from a state court judgment based
7        on that decision, Rooker-Feldman bars
8        subject matter jurisdiction in federal
9        district court.  If, on the other hand, a
10       federal plaintiff asserts as a legal
11       wrong an allegedly illegal act or
12       omission by an adverse party,
13       Rooker-Feldman does not bar jurisdiction.
14  Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003). The
15  doctrine bars "state-court losers complaining of injuries
16  caused by state-court judgments rendered before the
17  district court proceedings commenced from asking district
18  courts to review and reject those judgments."  Exxon
19  Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280,
20  284 (2005).

21

22    To determine whether the Rooker-Feldman doctrine bars
23  a plaintiff's complaint, the district court examines
24  whether the plaintiff's claims are "inextricably
25  intertwined" with a state court decision ruling against
26  plaintiff.  See Feldman, 460 U.S. at 486-87.  "Where the
27  district court must hold that the state court was wrong
28

in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined." Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001).

Here, Tate's claims concerning a conspiracy among the investigators, prosecutors, defense attorneys, and judges involved in his criminal case, among others, essentially request a finding that he was convicted wrongfully.  A finding in favor of Tate in this case requires a determination that the jury's verdict and the decision by the Court of Appeal were wrong, and that numerous Defendants conspired to bring about those results.  This Court therefore does not have subject matter jurisdiction under the Rooker-Feldman doctrine.  Moreover, to the extent Tate has alleged the existence of a conspiracy extrinsic to his criminal conviction and direct appeal, such that the underlying state court decisions are not implicated by the FAC's RICO claim, he has not alleged sufficient facts to support such a claim.  See Mooney v. Boli, No. C 06-7875 SI, 2007 WL 781973, *4 (N.D. Cal. Mar. 13, 2007) ("Absent any specific allegations regarding the alleged conspiracy, plaintiff's complaint amounts to an impermissible attack on the state court decision, and as such, is barred by the Rooker-Feldman doctrine.").

///

20

1    Moreover, Tate's claims further appear to allege RICO
2  claims based on many of the same arguments raised in his
3  earlier federal habeas petition, as a way to avoid the
4  bar on successive habeas petitions.  28 U.S.C. § 2244(b).
5  Having failed to obtain relief from his conviction upon
6  initial review by a federal court, Tate should not be
7  granted a further opportunity to challenge the underlying
8  state court proceedings.
9
10   Accordingly, the Court dismisses the FAC for lack of
11 subject matter jurisdiction, without leave to amend.
12 Tate cannot allege additional facts to support a RICO
13 claim that would not be barred by the Rooker-Feldman
14 doctrine, or the preclusive effect of past court
15 decisions, which are set forth below.
16
17 **C.   Tate's Vexatious and Harassing Litigation**
18   A district court has the authority to enjoin
19 "litigants with abusive and lengthy histories" under the
20 All Writs Act, 28 U.S.C. section 1651(a).  De Long v.
21 Hennessy, 912 F.2d 1144, 1147 (9th Cir. 1990) (citing
22 cases); Molski v. Evergreen Dynasty Corp., 500 F.3d 1047,
23 1057 (9th Cir. 2007).  Among the restrictions that may be
24 imposed on a litigant found to be vexatious is a
25 requirement that the litigant obtain the approval of a
26 judge before being allowed to file an action.  See
27 Central District Local Rule 83-8.2 (providing for such an
28

1    order); De Long, 912 F.2d at 1147; Molski, 500 F.3d at

2    1057 (recognizing district court's "inherent power to

3    enter pre-filing orders against vexatious litigants").

4

5        A pre-filing order is "an extreme remedy that should

6    rarely be used," however.  Molski, 500 F.3d at 1057.  Its

7    entry must be preceded by (1) notice and an opportunity

8    to be heard, (2) the compilation of an adequate record

9    for review, and (3) substantive findings concerning the

10   "frivolous or harassing nature" of the plaintiff's

11   litigation.  Id.  The pre-filing order also "must be

12   narrowly tailored to closely fit the specific vice

13   encountered."  Id. (quoting De Long, 912 F.2d at 1148).

14   In other words, "Courts should not enter pre-filing

15   orders with undue haste because such sanctions can tread

16   on a litigant's due process right of access to the

17   courts."  Id.

18

19       Nevertheless, the Ninth Circuit has recognized that

20   "[f]lagrant abuse of the judicial process cannot be

21   tolerated because it enables one person to preempt the

22   use of judicial time that properly could be used to

23   consider the meritorious claims of other litigants."  De

24   Long, 912 F.2d at 1148.  As set forth below, the Court

25   determines that Plaintiff Tate's vexatious and harassing

26

27

28

litigation in both state and federal courts requires the
entry of a pre-filing order against him.[3]

### 1. Notice and an opportunity to be heard

The Court's May 2, 2008 Order requiring Plaintiffs to
show cause why they should not be declared vexatious
litigants provided Tate with adequate notice and an
opportunity to be heard in writing.  See Pac. Harbor
Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112,
1118 (9th Cir. 2000) (holding that an opportunity to
brief in writing the issue of sanctions to be imposed on
an attorney "fully satisfies due process requirements");
Molski, 500 F.3d at 1058-59 (citing Pac. Harbor with
approval).  Tate filed an OSC Response, which the Court
has reviewed.

### 2. Record for review

"An adequate record for review should include a
listing of all the cases and motions that led the
district court to conclude that a vexatious litigant
order was needed."  De Long, 912 F.2d at 1147.  Here, the
record before the Court includes docket reports and some
of the documents and orders filed in earlier litigation

---

[3]Although the Court's May 2, 2008 Order required
Plaintiffs Walker and Crawford to show cause why they
should not be declared vexatious litigants, the Court
finds an inadequate record concerning their litigation
activities to support such a declaration at this time.

1  initiated by Tate against many of the same Defendants.[4]
2  The Court also takes judicial notice of orders issued in
3  cases pending before the Central District.  Fed. R. Evid.
4  201.

5

6       The record before the Court reflects the dismissal or
7  abandonment of the following additional lawsuits brought
8  by Tate that essentially challenge the validity of his
9  state court conviction.

10

11       1)   In Tate v. Nager, et al., Case No. BC188391,
12            filed in Los Angeles Superior Court on March 27,
13            1998, plaintiffs Tate and Sneakers alleged
14            claims for malicious prosecution and intentional
15            infliction of emotional distress against
16            defendants Dr. Nager and Children's Hospital Los
17            Angeles.  (Glick Decl. ¶ 3 & Ex. A at 19-25, 46-
18            48.)  Tate claimed that Dr. Nager's false
19            testimony resulted in Tate's wrongful
20            conviction, that Dr. Nager did not examine N. on
21            March 20, 1997, and that the false testimony

22  _____

23       [4]These documents were provided as exhibits to
    Defendants Rodriguez, Goldman, and Saltzman's "Request to
24  Take Judicial Notice and Declaration of Peter M. Glick"
    ("Glick Decl."), filed on February 25, 2008.  (Doc. no.
25  30.)  The Court grants Defendants' request and takes
    judicial notice of the exhibits attached to Glick's
26  declaration, which are all publicly available docket
    reports and court filings.  Fed. R. Evid. 201.  In
27  addition to filing Glick's declaration electronically,
    Defendants provided a paper copy of the exhibits to the
28  Court.

caused Tate to lose his restaurant business.
(Id. at 46-47.)  The Superior Court sustained
Defendants' demurrers, in part based on the
immunity provided to health care practitioners
who report child abuse by California Penal Code
sections 11166 and 11172(a).  (Id. at 65-66.)
On March 2, 1999, the Superior Court entered a
Judgment of Dismissal of Entire Action.  (Id. at
222.)

2)    On December 21, 1999, Tate filed a complaint in
the Central District against the City of Los
Angeles, Dr. Nager, Children's Hospital of Los
Angeles, and several other defendants who are
also named in the action before this Court, in
Case No. 99-13343-AHM (MAN).  (Glick Decl. ¶ 5 &
Ex. C (Docket report).)  By Order dated January
12, 2000, the court dismissed Plaintiff's
complaint with leave to amend, on the ground
that Plaintiff's civil rights claims would
necessarily imply the invalidity of his state
criminal proceedings and therefore were barred
under Heck v. Humphrey, 512 U.S. 477 (1994).
(Doc. no. 7.)  Pursuant to Tate's request, the
action was dismissed under Rule 41(a)(2) on
March 27, 2000.  (Doc. no. 28.)

///

3)   On January 20, 2000, Tate filed a complaint
against Judge Perry and Dale Michael Rubin in
the Central District, Case No. 00-678-AHM (MAN).
(Glick Decl. ¶ 6.)   The complaint alleged a
"conspiracy" among the Defendants with respect
to Plaintiff's criminal conviction and sentence.
(Doc. no. 13.)   By order dated April 7, 2000,
the court dismissed Tate's claim against Judge
Perry on the ground of judicial immunity and
dismissed Tate's other claims under <u>Heck</u>.   (<u>Id.</u>)

4)   On May 16, 2000, Tate sued Keith Bowman, Marylou
Hillberg, and the California Appellate Project
in Los Angeles Superior Court, Case No.
BC230173.   (Glick Decl. ¶ 8.)   Tate alleged
legal malpractice and negligent infliction of
emotional distress against the defendants, who
represented him in his criminal trial and
appeal.   (Glick Decl. Ex. F 291-302.)   The court
sustained the demurrer of the California
Appellate Project, which argued that a criminal
defendant must show actual innocence to state a
claim for legal malpractice.   (Glick Decl. Ex. F
332, 359.)   The Court entered Judgment in favor
of the California Appellate Project and against
Tate on November 27, 2000.   (<u>Id.</u> 391.)

///

5)   On November 11, 2001, Tate filed a Complaint in
     Los Angeles Superior Court against McDonald,
     Aval, and Rodriguez alleging claims for slander
     and intentional infliction of emotional
     distress, in Case No. BC260996.  (Glick Decl. ¶
     14 & Ex. L at 448-54.)   Tate alleged that the
     defendants -- who were the prosecutor in his
     criminal case and the defense attorneys
     representing his wife -- told Tate's wife lies
     about Tate in order "to protect the illegal
     activity of Department of Children[']s Services,
     LAPD, [Judge] Robert J. Perry, and the Los
     Angeles District Attorney's Office."  (Glick
     Decl. Ex. L 456.)   The court dismissed the
     action for failure to file timely proofs of
     service.  (Glick Decl. Ex. L 466.)

6)   In May 2003, Tate again filed suit in Los
     Angeles Superior Court against Aval, McDonald,
     and Rodriguez, in Case No. BC295135.  (Glick
     Decl. ¶ 16.)   In September 2004, the Superior
     Court sustained a demurrer without leave to
     amend, and declared Tate to be a vexatious
     litigant.  (Id.)   In this case, Tate alleged the
     same claims for slander and intentional
     infliction of emotional distress he previously
     had alleged in Case No. BC260996.

1    7)   Plaintiffs recently alleged a RICO claim against
2         many of the same Defendants sued here in the
3         California Superior Court for the County of
4         Riverside, <u>Sneakers, et al. v. Stanton, et al.</u>,
5         Case No. RIC 396597. (Glick Decl. ¶ 15.) That
6         court dismissed the action. (Glick Decl. ¶ 15 &
7         Ex. M 469 (Docket sheet showing entry of
8         judgment on June 12, 2007).) In addition, the
9         Superior Court found Tate to be a vexatious
10        litigant within the meaning of the California
11        Code of Civil Procedure, section 391 <u>et seq.</u>,
12        and ordered Tate to post $50,000 security to
13        proceed with the lawsuit. (Glick Decl. Ex. M
14        513-14.) The Second Amended Complaint in that
15        case, captioned "Racketeer Influenced and
16        Corrupt Organization (RICO) Claims For Damages
17        Currently Filed [¶] 18 U.S.C. § 1961 Et. Seq.
18        [¶] Second Amended Complaint," named thirty-nine
19        defendants; it also raised the same allegations
20        asserted in this case concerning the concealment
21        of evidence and a conspiracy to convict Tate.
22        (Glick Decl. ¶ 15 & Ex. M 958-1001.)

24   The preceding list of cases does not include the
25   following matters, in which Tate attempted to file an
26   action in the Central District but was unable to do so
27   when his requests to proceed without paying the required

filing fees were denied:  (1) <u>Tate v. Perry, et al.</u>, Case
No. 00-678-AHM (MAN);(2) <u>Tate v. L.A. County Dep't of
Children</u>, et al., Case No. 00-3435-UA; (3) <u>Tate v. Davis,
et al.</u>, Case No. 00-8829-UA (MAN); (4) <u>Tate v. County of
Los Angeles, et al.</u>, 01-7976-UA (VBK); (5) <u>Tate v.
California Appellate Project, et al.</u>, Case No. 04-500-UA
(VBK); (6) <u>Tate v. Perry</u>, Case No. 04-503-UA (VKB); (7)
<u>Tate v. County of Los Angeles, et al.</u>, Case No.
04-1759-UA (VBK); (8) <u>Tate v. California Appellate
Project, et al.</u>, Case No. 04-2223-UA (VBK); and (9) <u>Tate
v. Board of Prison Terms</u>, 05-3020-UA (VBK).  (Glick Decl.
7, 12, 18-25.)[5]

### 3.   Substantive Findings of Frivolousness

Before issuing a pre-filing injunction against a <u>pro
se</u> plaintiff, a district court must make "substantive
findings as to the frivolous or harassing nature of the
litigant's actions." <u>De Long</u>, 912 F.2d at 1148 (citing
<u>In re Powell</u>, 851 F.2d 427, 431 (D.C. Cir. 1988)).  "An
alternative to the finding of frivolousness is the
finding that De Long's claims show a pattern of
harassment." <u>Id.</u>

---

[5]Tate also has pending in the Central District a case
against the California Correctional Peace Officers
Association, 06-4505-AHM (VBK).  Magistrate Judge Victor
B. Kenton issued a Report and Recommendation to dismiss
Plaintiff's Complaint, for raising many of the same
issues that already had been determined in state court
proceedings.  (Doc. no. 57.)  A final order has not yet
been issued.

A district court must look at the number and content of a party's filings when examining the frivolousness of the claims asserted.  Id.  A showing of litigiousness alone is insufficient to support an injunction, however. "The plaintiff's claims must not only be numerous, but also be patently without merit."  Molski, 500 F.3d at 1059 (quoting Moy v. U.S., 906 F.2d 467, 470 (9th Cir. 1990)).  A district court also should "discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court."  Powell, 851 F.2d at 431.  Under the Local Rules of the Central District, any pre-filing order must be "based on a finding that the litigant to whom the order is issued has abused the Court's process and is likely to continue such abuse, unless protective measures are taken."  Local Rule 83-8.3.

Here, the Court finds Tate's numerous state and federal lawsuits to be frivolous, harassing, an abuse of the court's process, and to show a likelihood that he will continue to file such cases.  Many of the defendants Tate repeatedly sues are persons who have been determined to be immune from suit.  For example, Dr. Alan Nager, who testified for the prosecution at Tate's criminal trial and whom Tate has named as a defendant in numerous cases including this one, was determined to be immune from suit under a California statute protecting professionals who

1   report child abuse.  (Glick Decl. Ex. A at 65-66 (Order

2   issued by Superior Court in 1999 finding Nager to be

3   immune).)  In addition, Tate's central allegation against

4   Nager -- that he did not, in fact, examine N.'s injuries

5   in 1997 -- was determined to be based on a misreading of

6   Nager's trial testimony and the medical records by the

7   judge addressing Tate's federal habeas claims in January

8   2002.  (<u>Tate v. Rice</u>, No. 99-7750-AHM (MAN), Docket no.

9   65.)

10

11       Nevertheless, Tate has continued to assert claims

12  against Nager based on his belief that Nager did not

13  examine N. on March 20, 1997.  Tate also continues to

14  assert that Nager conspired with others to conceal the

15  1997 photographs of N. from Tate, despite rulings by

16  state and federal courts to the contrary.  The stream of

17  litigation Tate has initiated against Nager, despite the

18  legal and factual findings issued by state and federal

19  courts in Nager's favor, can be described only as

20  harassing.  The claims Tate has asserted against Nager,

21  despite those findings, also are frivolous.  Furthermore,

22  Tate's persistent abuse of the court's process by filing

23  meritless claims against Nager suggests that he will

24  continue such abuse in the absence of an injunction.

25

26       Tate also has filed numerous suits against justices

27  of the California Court of Appeal, the California

28

1  Superior Court judge who presided over his trial, and the
2  prosecutor who tried the charges against him, despite the
3  well-established doctrines of judicial and prosecutorial
4  immunity.  Although Tate claims he has alleged claims
5  against these Defendants in their individual, rather than
6  official, capacities, his theories of liability are
7  highly implausible as a matter of fact.  Many of Tate's
8  complaints have alleged some form of conspiracy to offer
9  perjured testimony and conceal evidence from him in order
10 to obtain a conviction.  The members of the alleged
11 conspiracy may vary from one pleading to the next, but
12 the conspiracy usually involves the concealment of the
13 1992 Florida photographs, Dr. Nager's testimony and the
14 medical records he completed, and Tate's inability to
15 obtain judicial review of his claims.  The members of the
16 conspiracy have been alleged to include both California
17 and Florida law enforcement officers, social workers, the
18 prosecutor from Tate's criminal case, the trial judge
19 from his criminal case, Court of Appeal justices, his
20 appellate counsel, and  correctional officers.  Tate's
21 continued allegations that these varied persons engaged
22 in a concerted effort to obtain his conviction not only
23 are implausible, but also directly contrary to past
24 findings of state and federal courts.  The assertion of
25 "baseless and exaggerated claims [that] exceed[ ] any
26 legitimacy" may be a basis for determining that a
27
28

1   litigant's cases are vexatious.  <u>Molski</u>, 500 F.3d at

2   1061.

3

4        To the extent that Tate's claims are based on the

5   dependency proceedings related to his children, federal

6   courts do not have subject matter jurisdiction over

7   matters pertaining to domestic relations.  <u>See, e.g.</u>,

8   <u>Rose v. Rose</u>, 481 U.S. 619, 625 (1987) ("[T]he whole

9   subject of the domestic relations of husband and wife,

10  parent and child, belongs to the laws of the States and

11  not to the laws of the United States.") (internal

12  quotation and citations omitted).

13

14       Finally, Tate's attempt to allege civil RICO

15  conspiracy claims are barred by the statute of

16  limitations.  Civil RICO claims are subject to a four-

17  year statute of limitations.  <u>Rotella v. Wood</u>, 528 U.S.

18  549, 553 (2000).  The limitations period begins to run

19  "when a plaintiff knows or should know of the injury

20  which is the basis for the action."  <u>Living Designs, Inc.</u>

21  <u>v. E.I. Dupont de Nemours and Co.</u>, 431 F.3d 353, 365 (9th

22  Cir. 2005).  Despite Tate's claim that he discovered the

23  matters asserted in the FAC in February 2008, (OSC

24  Response at 7:15-16), that assertion is belied by the

25  many claims Tate has made in earlier litigation.  Tate

26  has alleged since at least 2001 that a conspiracy among

27  some subset of the Defendants he has sued in this action

28

caused him injury.  (See Habeas Order 45-46 (noting
Tate's claim of conspiracy made in connection with his
federal habeas petition).)  He also has alleged
consistently since that time that various authorities
have concealed evidence concerning his case from him.
Tate's attempt to recover under a RICO theory therefore
is clearly barred by the statute of limitations.

    The Court therefore finds to be frivolous the claims
that Tate continues to raise related to, or previously
raised in, the following actions:

- Tate v. Rice, Case No. 99-7750-AHM (MAN) (C.D. Cal.);
- Tate v. City of Los Angeles, et al., Case No. 99-13343-AHM (MAN) (C.D. Cal.);
- Tate v. Perry, et al., Case No. 00-678-AHM (MAN) (C.D. Cal.);
- Tate v. Nager et al., Case No. BC188391 (Los Angeles Super. Ct.);
- Tate v. Bowman, et al., Case No. BC230173 (Los Angeles Super. Ct.);
- Tate v. McDonald, et al., Case No. BC260996 (Los Angeles Super. Ct.);
- Tate v. Aval, et al., Case No. BC295135 (Los Angeles Super. Ct.); and
- Sneakers, et al. v. Stanton, et al., Case No. RIC 396597.

1   Those issues include, but are not limited to: (1) Dr.

2   Nager's purportedly perjured testimony and the medical

3   records he completed; (2) the actions of the trial judge

4   and appellate justices in Tate's state criminal

5   proceedings; (3) the actions of Tate's appellate counsel,

6   his counsel at his resentencing, or counsel for his wife;

7   (4) his inability to obtain photographs taken of N. in

8   1992 in Florida from either Florida or Los Angeles

9   authorities; and (5) the custody of his children

10  following his arrest and conviction.  Based on the

11  complaints Tate has filed to date predicated on these

12  topics, the Court finds it likely Tate will continue to

13  raise claims to redress these perceived wrongs and that

14  protective measures must be taken.  Local Rule 83-8.3.

15

16      **4.   Pre-Filing Order**

17      A pre-filing order "must be narrowly tailored to the

18  vexatious litigant's wrongful behavior."  <u>Molski</u>, 500

19  F.3d at 1061.  The Ninth Circuit has found an order

20  preventing a litigant from filing any suit in a

21  particular district court to be overbroad.  <u>De Long</u>, 912

22  F.2d at 1148.  On the other hand, an order preventing a

23  party from filing actions under Title III of the

24  Americans with Disabilities Act was found to be

25  appropriate, because it "cover[ed] only the type of

26  claims the [litigant] had been filing vexatiously."

27  <u>Molski</u>, 500 F.3d at 1061.  In addition, the pre-filing

28

order upheld in <u>Molski</u> did not provide for a blanket
prohibition on the filing of ADA actions.  Instead, it
required the plaintiff to submit a proposed complaint to
a district judge for initial screening, before it could
be approved for filing.  <u>Id.</u>

Here, the Court finds it appropriate to require Tate
to submit for screening any pleading he proposes to file
to initiate a new action, where the pleading asserts
claims based on the following perceived wrongs:  (1)
Tate's state conviction and sentence; (2) Dr. Nager's
purportedly perjured testimony at Tate's criminal trial;
(3) the actions of the trial judge and appellate justices
in Tate's state criminal proceedings; (4) the actions of
Tate's appellate counsel, his counsel at his
resentencing, counsel for his wife, or counsel in
dependency proceedings concerning his children; (5) his
inability to obtain photographs taken of N. in 1992 in
Florida from either Florida or Los Angeles authorities;
(6) the custody of his children following his arrest and
conviction; and (7) any other issue or claim related to
any of the claims or issues raised in the following
actions:

- <u>Tate v. Rice</u>, Case No. 99-7750-AHM (MAN) (C.D.
  Cal.);

- <u>Tate v. City of Los Angeles, et al.</u>, Case No.
  99-13343-AHM (MAN) (C.D. Cal.);

1   •     <u>Tate v. Perry, et al.</u>, Case No. 00-678-AHM (MAN)
2         (C.D. Cal.);

3   •     <u>Tate v. Nager et al.</u>, Case No. BC188391 (Los
4         Angeles Super. Ct.);

5   •     <u>Tate v. Bowman, et al.</u>, Case No. BC230173 (Los
6         Angeles Super. Ct.);

7   •     <u>Tate v. McDonald, et al.</u>, Case No. BC260996 (Los
8         Angeles Super. Ct.);

9   •     <u>Tate v. Aval, et al.</u>, Case No. BC295135 (Los
10        Angeles Super. Ct.); and

11  •     <u>Sneakers, et al. v. Stanton, et al.</u>, Case No.
12        RIC 396597.

13

14   **IV. CONCLUSION**

15   For the foregoing reasons, the Court GRANTS in part
16   and DENIES in part Plaintiffs' Motion for Relief from
17   Judgment, and grants Plaintiff Tate relief from the
18   Court's May 2, 2008 Order of dismissal.  Nevertheless,
19   the Court DISMISSES the First Amended Complaint for lack
20   of subject matter jurisdiction, without leave to amend.

21

22   In addition, the Court finds and declares Clarence
23   Demetrius Tate to be a vexatious litigant and orders that
24   ///
25   ///
26   ///
27   ///

28

1  any pleading he attempts to file be screened before he is

2  allowed to initiate an action, as set forth above.

3

4  Dated: <u>September 2, 2008</u>                    *Virginia A. Phillips*

5                                    _____
                                    VIRGINIA A. PHILLIPS
                                    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28